

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| WEYERHAEUSER COMPANY | CIVIL ACTION NO. 06-0272 |
| VERSUS | JUDGE DONALD E. WALTER |
| A.D. HINTON, L.L.C., ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court are Motions for Summary Judgment filed on behalf of the Hinton

defendants [Doc. # 12], the Hunt defendants [Doc. #17], Paul M. Davis, III [Doc. #42], and the

Desert Partners defendants [Doc. #44], and a Cross-Motion for Summary Judgment filed on behalf

of plaintiff, Weyerhaeuser Company [Doc. #51], pursuant to Federal Rule of Civil Procedure 56.

All motions are opposed. For the reasons assigned herein, defendants' motions are **GRANTED**,

plaintiff's motion is **DENIED** and plaintiff's claims are **DISMISSED**.

## STATEMENT OF THE CASE

Plaintiff, Weyerhaeuser Company ("Weyerhaeuser"), brings this action against the Hinton,

Hunt and Desert Partners defendants, and Paul M. Davis, III, for declaratory judgment and damages

incurred as a result of its predecessor-in-interest executing and recording an Act of Interruption,

Renunciation and Acknowledgment that purported to interrupt the running of liberative prescription

of ten years' nonuse on mineral servitudes created by an Act of Cash Sale executed in 1971.

Weyerhaeuser asserts that the acknowledgment should be declared an absolute nullity as it is an

unlawful act premised on an unlawful cause, or should be declared invalid. Defendants assert that

the acknowledgment at issue is valid, and thus, plaintiff's claims must fail. This Court agrees.

Weyerhaeuser is the successor-in-interest by merger to Willamette Industries, Inc.

("Willamette"). Complaint, ¶8. Pursuant to an Act of Cash Sale dated December 22, 1971, (the "Act of Cash Sale"), Willamette purchased from Davis Brothers Lumber Company, Ltd., in Liquidation ("Davis Brothers") approximately 64,200 acres of land located across Winn Parish, Lincoln Parish, Bienville Parish and Jackson Parish, Louisiana. Complaint, ¶5; Exhibit A, Act of Cash Sale. In the Act of Cash Sale, Davis Brothers reserved and excepted from the sale "all of the oil, gas and other minerals that may be produced from the above described property" thereby creating mineral servitudes in favor of Davis Brothers (the "1971 Servitudes"). Exhibit A, p. 41.

On December 22, 1971, Willamette sent a letter agreement (the "Letter") to Davis Brothers explaining its intent with regard to the effective term of the 1971 Servitudes. Exhibit B. The Letter clearly states that despite Louisiana's public policy "mak[ing] unenforceable any agreement or attempt to extend the effective term of a mineral interest or servitude beyond that established by law", the parties intended for the 1971 Servitudes to remain in effect until 2021. To that purpose, Willamette agreed to the following:

> From time to time upon the written request of the duly authorized agent for then owners of such mineral interest, Willamette would execute such instruments as may be necessary for the purpose of interrupting or tolling the running of liberative perscription against the mineral servitudes created by the reservation. Each such instrument shall contain a provision holding Willamette and its officer and directors harmless from any and all loss or damage of whatsoever kind and character by reason of executing such instruments if, but only if, in the opinion of counsel for Willamette it is then lawful for Willamette to execute same.

The Letter further provides that "[t]he intention of Willamette as expressed herein shall never, under any circumstance, be considered a legal or enforceable obligation against Willamette, its successors or assigns." Exhibit B.

On December 29, 1971, Davis Brothers, by Act of Transfer, transferred the 1971 Servitudes

to the former stockholders of Davis Brothers in the proportions of their respective stock ownership. Exhibit J. All defendants but the Desert Partners defendants are either the former shareholders of Davis Brothers, or are believed to be the universal successors to those former shareholders. The Desert Partners defendants are third parties who acquired an undivided interest in the 1971 Servitudes through several different acts of conveyance executed in November of 2004 and June of 2005, by Frances Sentell Davis, James Bolton Davis and Paul M. Davis, III, universal successors to the former shareholders. Exhibit G.

On four separate occasions, Willamette executed substantively identical Acts of Interruption, Renunciation and Acknowledgment (the "Acknowledgments"). The Acknowledgments are dated August 15, 1977, August 9, 1984, November 22, 1991, and August 6, 1998. Exhibits C - F. Each Acknowledgment references the Letter and Willamette's intention to carry out the parties' will as made clear by the Letter. To that end, each Acknowledgment states as follows:

> **NOW, THEREFORE,** Willamette Industries, Inc., . . . as the owner of the lands to which said mineral servitudes relate, does now formally interrupt the running of the liberative prescription against the mineral servitudes created by the Act of Sale of December 22, 1971, as above referred to; renounce[s] any claim to any of the oil, gas, and other minerals which, in said Act of Sale were reserved by the Liquidators of Davis Brothers Lumber Company, Limited, In Liquidation; and acknowledge[s] that the mineral servitudes created by the reservation of minerals made in said Act of Sale of December 22, 1971, are now in full force and effect and shall continue in full force and effect from and after this date for the full term permitted by the laws of Louisiana.

Id. Each Acknowledgment identifies by book and page the Acts of Sale and Acts of Transfer recorded in the Conveyance Records of each of the four Parishes where mineral servitudes are located. Id. Each Acknowledgment was executed before a Notary Public and two witnesses, was approved by Resolution by Willamette's Board of Directors and was recorded in the Conveyance

Records of each of the four parishes where the mineral servitudes are located. Id.

Plaintiff asserts that the 1998 Acknowledgment is an absolute nullity as it was "premised on an unlawful cause in derogation of laws enacted for protection of the public interest," and, thus, should be rescinded from October 3, 2005 forward.[1] Plaintiff's Mem. in Opp., p. 2. Plaintiff further asserts that the 1971 Agreement, and its "progeny", are not binding on Weyerhauser as Willamette's successor. Finally, plaintiff asserts that the 1998 Acknowledgment does not contain the basic information necessary to serve as a valid interruption of prescription of a mineral servitude.

The facts as they pertain to the validity of the 1998 Acknowledgment are not disputed. Only a legal issue remains as to the validity of that Acknowledgment. Thus, this matter is ripe for determination on summary judgment.

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Id.

The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to

---

[1]October 3, 2005, is the date on which plaintiff alleges defendants were "placed on notice that Weyerhauser had discovered and would not be party to Defendants' efforts to violate the law." Plaintiff's Mem. in Opp., p. 9.

interrogatories, admissions, and/or affidavits which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309 (5th Cir. 1999). The moving party is not required to negate the elements of the non-moving party's case. Lawrence, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 584-88, 106 S.Ct. 1348, 1355-56 (1986). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Little v. Liquid Air. Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). In the absence of any proof, the court will not assume the non-moving party could or would prove the necessary facts. Id.

Pursuant to Local Rule 56.1, the moving party shall file a Statement of Uncontested Facts as to which it contends there is no genuine issue to be tried. Local Rule 56.2 requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for the purposes of the motion, unless controverted. . . ." Local Rule 56.2.

## LAW AND ANALYSIS

The only issue before this Court is whether the 1998 Acknowledgment executed and recorded

by Willamette is valid. Under Erie Railroad Co. v. Tomkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), this Court must look to Louisiana law to make this determination.

The Louisiana Mineral Code defines a mineral servitude as "the right of enjoyment of land belonging to another for the purpose of exploring for and producing minerals and reducing them to possession and ownership." La. R.S. 31:21. Although the owner of a mineral servitude is under no obligation to exercise it, the servitude may be extinguished by, inter alia, "prescription resulting from nonuse for ten years." La. R.S. 31:22; La. R.S. 31:27.

Prescription of nonuse can be interrupted in various ways: good faith operations for the discovery and production of minerals, La. R.S. 31:29-41, or a landowner's acknowledgment of the mineral interest, La. R.S. 31:54. As to acknowledgments, the Mineral Code states that:

> The prescription of nonuse may be interrupted by a gratuitous or onerous acknowledgment by the owner of the land burdened by a mineral servitude. An acknowledgment must be in writing, and, to affect third parties, must be filed for registry.

La. R.S. 31:54. An acknowledge must "express the intent of the landowner to interrupt prescription and clearly identify the party making it and the mineral servitude or servitudes acknowledged." La. R.S. 31:55.

Weyerhauser does not discuss the invalidity of acknowledgments in general. Rather, Weyerhauser attacks the intent behind the Acknowledgments executed by Willamette in light of the Letter. In opposing defendants' motions, Weyerhauser asserts that "[h]ere, Willamette and Davis Brothers had in mind at the time of the 1971 Letter avoidance or escape from the effects of the law of prescription as applied to mineral servitudes." Weyerhauser Mem. in Opp., p. 11. Weyerhauser further asserts that "[t]he undisputed evidence overwhelmingly reflects that the parties, at all times,

intended to create servitudes that would not prescribe in ten years, but rather would last a total of fifty years." Id.

The Court recognizes that Willamette and Davis Brothers wanted to have a fifty-year servitude but were unable to do so legally, as was mentioned in the Letter. Although Willamette's agreement to execute Acknowledgments from time to time could have had the result of fifty years unused mineral interests, the parties acknowledged, so to speak, the possibility that their intention might not be carried out by a situation such as that presently before the Court.

Louisiana courts and the comments in the Mineral Code explain how and why acknowledgments, though potentially having the effect of removing minerals from commerce for an extended period of time, are valid.

> The public policy, as relates to the prescription of nonuser as applied to mineral servitudes, is directed against attempts to renounce prescription in advance, or to suspend or to interrupt prescription by means other than user or other means expressly recognized by law, such as acknowledgments made specifically for the purpose and with the intention of interrupting the running of prescription. What the courts have considered as contrary to public policy are agreements which seek to cause the lands to be burdened with mineral servitudes for more than 10 years without user.

Chicago Mill and Lumber Co. v. Ayer Timber Co., 131 So.2d 635, 651 (La. App. 2d Cir. 1961), citing Hicks v. Clark, 225 La. 133, 72 So.2d 322 (1954). No act on the part of the landowner will have the effect of interrupting prescription and extending the life of a mineral interest unless it is shown that there was a clear intention on the part of the landowner to achieve the result. LeBleu v. LeBleu, 206 So.2d 551, 557 (La. App. 3d Cir. 1967), citing Barnsdall Oil Co. v. Miller, 224 La. 216, 69 So.2d 21 (1953).

The difference between an *invalid* attempt to extend the life of a mineral servitude beyond

the ten years dictated by public policy and *validly* extending the life of a servitude by interrupting prescription with a written and recorded acknowledgment is the conscious choice of the landowner. Although Louisiana law has yet to require "an exchange of equivalents or 'consideration'" for an acknowledgment of mineral rights, "it has compensated for this by the development of a rigid set of formal rules intended to assure that a landowner is **fully aware of and clearly intends the legal consequences of his act** in acknowledging outstanding mineral rights." La. R.S. 31:54, Comments (emphasis added). The comments compare the formal requirements of acknowledgments to those formalities required to support a valid donation of immovables. Id. "Observance of these formalities is sufficient to give full evidence of the liberal intent supplying cause for the act and to warrant legal enforcement of it even in the absence of 'consideration.'" Id. With acknowledgments of outstanding mineral servitudes, "the formal requirements serve a similar function, that of **supplying reliable evidence of a party's serious intent to interrupt the running of liberative prescription.**" Id. (emphasis added). The Court is aware that the comments to statutes are not binding. However, they are indicative of the intent of legislature in allowing for such an instrument to keep minerals out of commerce at the election of the landowner.

With an acknowledgment, the landowner must make a reasoned decision at least every ten years as to whether to continue the mineral servitude. In contrast to an invalid fifty year servitude, for example, where the minerals sit unused and unnoticed and remain out of commerce, the servitude temporarily comes into commerce by the landowner having to make a decision as to what to do with the servitude at least every ten years. Willamette and defendants' predecessors-in-interest recognized Willamette's right to make this decision in the Letter:

> The intention of Willamette as expressed herein shall never, under any

circumstances, be considered a legal or enforceable obligation against Willamette, its successors or assigns. Further, it is expressly stated that the failure of Willamette, its successors or assigns to execute any instrument mentioned shall not affect the validity of the act of sale nor in any manner be construed as a condition, resolutory or otherwise, of such sale and **shall not subject Willamette, its successors or assigns, to any claim for damages**.

Exhibit B (emphasis added).

Willamette elected to interrupt the running of prescription of nonuse in favor of defendants four times: in 1977, 1984, 1991 and 1998. Each Acknowledgment clearly expressed Willamette's intent to interrupt prescription of nonuse, identified the landowner and the servitude holders, and adequately described the servitudes and the burdened immovables by specific cross-reference to the properly recorded conveyances. This Court finds that each one of these acknowledgments was and is valid, and enforceable, against Willamette's successors. On the other hand, it is without question that if no use is made of the servitudes prior to 2008, the minerals will revert to Weyerhauser, as landowner and successor-in-interest to Willamette, as it is likely, if not certain, that Weyerhauser will not elect to continue with Willamette's practice of executing acknowledgments to interrupt prescription.

## CONCLUSION

Accordingly, for the reasons stated above, defendants' motions are **GRANTED**, plaintiff's motion is **DENIED**, and plaintiff's claims are **DISMISSED**.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

9